STATE OF MINNESOTA *vs.* MINNEAPOLIS MILL COMPANY.

October 17, 1879.

Right to use of Water-power is taxable as real and not as personal property.— Defendant is a corporation, organized and acting under a charter found in Laws 1856, *c.* 145. The company is the owner in fee of land upon the westerly bank of the Mississippi river, at the Falls of Saint Anthony, opposite which land it has built and maintains a dam extending from such bank into the river. The company has leased to different parties four mill-sites upon the dam, together with the right to use, upon and at said respective sites, the quantity of water in the leases specified—in all amounting to thirteen water-powers, (so called;) "the said water and water-powers being taken and used thereat directly from the main body of the said river, running through said dam, and regulated by means of gates therein." *Morrill* v. *St. Anthony Falls Water-Power Co.,* *ante,* p. 222, followed as to the general rule that a riparian owner may use the waters of a navigable river (like the Mississippi) adjoining his land, for any purpose, for his own advantage, so long as he does not impede navigation, and in the absence of any counter claim by the state or the United States. The right to this use rests upon the fact of ripa-

rian ownership; that is to say, the riparian proprietor possesses this right because he owns the land upon the bank; or, in other words, the right is attached as an incident to the riparian land, and belongs and appertains to the same. It follows that the defendant's right to the use of the water is, for all purposes of taxation, real property, and not personal, since our tax law provides that real property, for the purposes of taxation, shall be construed to include the land itself, and all rights and privileges belonging, or anywise appertaining, thereto.

Case certified from the district court for Hennepin county, *Young*, J., presiding.

*W. E. Hale*, for the State.

*Shaw & Levi*, for defendant.

Berry, J. The defendant is a corporation, organized and acting under a charter found in Laws 1856, c. 145. By section 9 of the charter, the company is "authorized, for the purpose of the improvement of the water-power above and below the Falls of St. Anthony, in the ·Mississippi river, to maintain the present dams and sluices, and to construct dams, canals and water sluices, erect mills, buildings or other structures, for the purpose of manufacturing in any of its branches, or improving any water-power owned or possessed by said company, in such manner and to such extent as shall be authorized by the directors of said company; and may construct dams on the rapids above or below the Falls of St. Anthony, with side-dams, sluices, and all other improvements, in the Mississippi river, which may be necessary for the full enjoyment of the powers therein granted." Section 12 provides that the company "shall be restricted in its operations (*i. e.*, under section 9) to the centre of the main channel of the Mississippi river, and to the property belonging to said company."

· The company is the owner in fee of land upon the westerly bank of the river, opposite which it has built and maintains a dam, extending from such bank into the river. It appears that the company has leased to different parties four mill-sites upon the dam, together with the right to use, upon and at said respective sites, the quantity of water in the leases specified—in all amounting to thirteen water-powers, (so-

called;) "the said water and water-powers being taken and used thereat directly from the main body of the said river, running through said dam, and regulated by means of gates therein." For the year 1877, these thirteen water-powers were taxed as the personal property of the defendant. For the same year, a real-property tax was assessed and levied upon all the real estate and mill-sites of the defendant, and this tax has been paid. So, also, for the same year, the mills situate upon the leased mill-sites mentioned were taxed as the personal property of the lessees, and this tax has also been paid.

The present proceeding is instituted in behalf of the state, for the purpose of collecting the personal-property tax levied upon the thirteen water-powers. The court below was of opinion that the state was entitled to judgment against the defendant for the amount of the tax, but, upon the application of the defendant, the case has been certified here for our opinion in the premises. The question presented is, were these thirteen water-powers properly taxed to the defendant as personal property?

In the recently decided case of *Morrill* v. *St. Anthony Falls Water-Power Co., ante,* p. 222, we had occasion to consider the question of the rights of riparian proprietors upon the Mississippi river. The general rule arrived at was that a riparian owner may use the waters of a navigable stream adjoining his land, for any purpose, for his own advantage, so long as he does not impede navigation, and in the absence of any counter claim by the state or the United States. As the riparian owner has this right to the use of the water, he has a right to enjoy it and make it available; otherwise, his right would be a worthless abstraction. He may, therefore, subject to the limitations of the general rule before stated, use the bed of the stream, if necessary or convenient to the enjoyment of his right to the use of the water. He may erect dams there, and such other structures as will promote and facilitate the enjoyment of this right. For these purposes

the riparian proprietor may properly be said to have, if not an interest, certainly a right, in the bed of the stream itself. The right of a riparian proprietor upon a navigable stream, such as the Mississippi, rests, as is held by this court in the case above cited, upon the fact of riparian ownership; that is to say, the riparian proprietor possesses this right because he owns the land upon the bank; and this is equivalent to saying that the right is attached as an incident to the riparian land, and belongs and appertains to the same. Whether the right of the riparian proprietor to the use of the water can be severed from the ownership of the bank, so that the right is owned by one person and the bank by another, and, if this could be and was done, what would be the character of the property of the owner of the right, as real or personal, are questions not raised by the facts of this case. The defendant is the owner of the bank, and of the right to the use of the water, and, therefore, of the right to make his right to the use of the water available by using the bed of the stream. In the defendant's hands the riparian land, and the right to the use of the water, and to the use of the bed of the stream, are held together. The principal, which is the riparian land, draws to it the incident, which is the right to the use of the water, so that the latter is part and parcel of the former. The defendant's right, as riparian proprietor, to the use of the water, is not conferred by the provision before quoted from its charter. The effect of this section is to define the corporate powers of the company, and to signify the assent of the government to the use of the river, in the manner and for the purposes in said section mentioned.

It follows from what we have said that the defendant's right to the use of the water is, for all purposes of taxation, real property and not personal, for our tax law provides that "real property, for the purposes of taxation, shall be construed to include the land itself,    *    *    *    *    and all rights and privileges belonging or anywise appertaining thereto." The leased water-powers which are sought to be taxed as

personal property in this case are merely a part of the defendant's right to the use of the water.    They are, therefore, real and not personal property, and hence it follows that, in our opinion, they were improperly taxed as personal property.